UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Lucas Michael Baillargeon

    v.                                Civil No. 17-cv-615-JL
                                         Opinion No. 2019 DNH 009
Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration


**O R D E R**

Lucas Baillargeon moves to reverse the decision of the
Acting Commissioner of the Social Security Administration
("SSA") to deny his applications for Social Security disability
insurance benefits, or DIB, under Title II of the Social
Security Act, 42 U.S.C. § 423, and for supplemental security
income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Acting
Commissioner, in turn, moves for an order affirming her
decision.  For the reasons that follow, this matter is remanded
to the Acting Commissioner for further proceedings.

**I. Scope of Review**

The scope of judicial review of the Acting Commissioner's
decision is as follows:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive
. . . .

42 U.S.C. § 405(g) (setting out standard of review for decisions on claims for DIB); see also 42 U.S.C. § 1383(c)(3) (applying § 405(g) to SSI decisions).  Substantial evidence, in turn, is evidence that "a reasonable mind . . . could accept . . . as adequate to support [a] conclusion." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).  However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

## II. Background

The parties have submitted a Joint Statement of Material Facts.  That statement[1] is part of the court's record and is summarized here, not repeated in full.

Baillargeon applied for SSI and DIB in May of 2013, claiming that he became disabled in September of 2012 due to

---

[1] Document no. 13.

diabetes, weight, joint pain, neuropathy,[2] knees, and a crushed disc.  On the day on which he claims to have become disabled, i.e., his alleged onset date ("AOD"), Baillargeon was 46 years old.

In June of 2012, approximately three months before his AOD, Baillargeon's primary-care physician, Dr. Brian Sponseller, referred him to an occupational therapist, Lynn Chauvette, for a Functional Capacity Evaluation.  According to Ms. Chauvette, Baillargeon could perform each of the following activities occasionally (i.e., up to one third of the day):  standing, walking, sitting, lifting 10 pounds, carrying 10 pounds, pushing 10 pounds, pulling 10 pounds, climbing, stooping, reaching forward, handling, working above his shoulders, pinching, and writing.  Ms. Chauvette also opined that Baillargeon could never crouch, crawl, or kneel.

In an October 2012 letter, Dr. Sponseller wrote:  "I have reviewed a functional capacity evaluation [by Ms. Chauvette] and I concur with its findings concerning [Baillargeon's] sitting, standing and manipulative limitations."  Administrative Transcript (hereinafter "Tr.") 566.

---

[2] Neuropathy is "[i]n contemporary usage, a disease involving the cranial nerves or the peripheral or autonomic nervous system."  Stedman's Medical Dictionary 1313 (28th ed. 2006).

In July of 2014, Dr. Sponseller completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). In it, he opined that Baillargeon could frequently lift ten pounds, stand and/or walk for at least two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. He further opined that Baillargeon could occasionally climb ramps/stairs/ladders/ropes/scaffolds, kneel, and crouch, but could never balance, crawl, or stoop. Finally, he opined that Baillargeon had no manipulative, visual/communicative, or environmental limitations.

The SSA denied Baillargeon's applications. In November of 2014, he received a hearing before an Administrative Law Judge ("ALJ"). The ALJ ruled that Baillargeon was not disabled.

In her decision, the ALJ determined that Baillargeon had four severe impairments,[3] but also found that none of them, either alone or in combination with any other impairment(s), met or medically equaled the severity of any of the impairments on the SSA's list of impairments that are per se disabling. Next, the ALJ assessed Baillargeon's residual functional capacity ("RFC"),[4] and described it this way:

---

[3] Those impairments are diabetes mellitus, obesity, obstructive sleep apnea, and degenerative disc disease of the lumbar spine.

[4] "[R]esidual functional capacity 'is the most [a claimant] can still do despite [his or her] limitations.'" Purdy, 887

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he could lift and carry ten pounds; stand or walk for two hours and sit for six hours in an eight-hour day; [could] never climb ladders, ropes, or scaffold[s] and [needed to] avoid balancing on narrowing or elevated surfaces; [needed to] avoid crawling or stooping; [could] occasionally climb ramps or stairs, kneel, or crouch; and [could] rarely stoop with rarely defined as less than five percent of the workday.

Tr. 159.  Based upon that RFC, the ALJ determined that Baillargeon could not perform his past work, all of which was performed at the medium exertional level.[5]  But, in reliance upon the testimony of a vocational expert ("VE"), the ALJ determined that Baillargeon retained the RFC to perform three sedentary jobs.[6]

The SSA's Appeals Council ("AC") vacated the ALJ's decision and remanded the matter for a new decision.  It did so because the ALJ made two conflicting findings about the same postural activity when she determined that claimant:  (1) could not stoop at all; but (2) could stoop up to five percent of the workday.

---

F.3d at 10 n.2 (quoting 20 C.F.R. § 416.945(a)(1), a regulation governing claims for SSI that is worded identically to 20 C.F.R. § 404.1545(a)(1), which governs claims for DIB) (brackets in the original).

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) & 416.967(c).

[6] "Sedentary work involves lifting no more than 10 pounds at a time . . . ." 20 C.F.R. §§ 404.1567(a) & 416.967(a).

In its remand order, the AC directed the ALJ to: (1) "[o]btain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913)," Tr. 175; (2) further consider claimant's RFC "and provide [a] rationale with specific references to evidence of record in support of the assessed limitations," id.; and (3) obtain evidence from a VE, if necessary.

On remand, claimant received a second hearing before the same ALJ who had conducted his previous hearing and who had issued the decision that resulted in the AC's remand. At that hearing, the ALJ took testimony from Dr. John Kwock.[7] Following his review of claimant's medical records, Dr. Kwock opined that none of the impairments he considered met or medically equaled the severity of any of the impairments on the SSA's list of impairments that are per se disabling.[8] Then he assessed claimant's RFC and said, among other things:

---

[7] Of the three different spellings of this name that appear in the record, this is the one that appears most frequently.

[8] Dr. Kwock considered "thoracolumbar scoliosis, . . . lumbar spine degenerative disc and degenerative joint disease to a fairly significant degree . . . bilateral hip osteoarthritis to a mild, at most moderate degree [and] morbid[] obes[ity]." Tr. 88.

> [H]e still remains capable of doing light work.  That
> is to say that he can lift and carry up to ten pounds
> on a frequent basis, between 11 and 20 pounds on an
> occasional basis, and anything above 21 pounds on a
> never basis.
>
> . . . [H]e probably can still sit for four hours
> out of the eight . . . stand for four hours out of the
> eight, and . . . walk for four hours out of the eight.

Tr. 89-90.[9]  Subsequently, Dr. Kwock clarified his opinion on

claimant's capacity for standing and walking.  He stated that he

was not opining that claimant "could stand for four hours out of

an eight-hour day plus walk four hours out of an eight-hour

day," Tr. 105, but rather, that claimant was capable of a total

of four hours of standing and/or walking in an eight-hour day,

see id.

After the ALJ heard from Dr. Kwock, she took testimony from

a VE.  First, she asked a hypothetical question that posited a

person the ALJ described this way:

> [T]he individual can occasionally lift and carry up to
> 20 pounds and frequently lift and carry up to 10
> pounds.  I want you to assume the individual could . .
> .  stand and/or walk for up to four hours [in] an
> eight-hour day and sit for four hours out of an eight-
> hour day, all with normal breaks.  I want you to
> assume that the individual would not be able to climb
> ladders, ropes, or scaffolds, would not be able to
> crouch or crawl.  Other postural activities could be
> performed on an occasional basis.

---

[9] "Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighting up
to 10 pounds [and generally] requires a good bit of walking or
standing."  20 C.F.R. §§ 404.1567(b) & 416.967(b).

The individual would have to avoid exposure to hazards, such as unprotected heights, dangerous moving machinery, and balancing on narrow surfaces, on wet or slippery surfaces, or uneven surfaces. The individual could drive while on the job on an occasional basis.

Tr. 111-12.

According to the VE, the individual the ALJ described could not do claimant's past work as a delivery-truck driver, concrete-mixing-truck driver, fuel-oil delivery driver, heavy-equipment operator, dump-truck driver, or tractor-trailer truck driver, but could perform his past work as a security guard. The VE further testified that a person with the specified RFC would be able to perform the light-duty jobs of gate guard, merchandise marker, and cashier. After indicating the number of each of those jobs that exist in the national economy, the VE further explained: "I'm going to reduce the number of cashier's nationally by 50 percent to allow for that sit/stand option based on work assignment; convenience store cashiers, for example, may not be able to, but a retail clerk could certainly use a stool." Tr. 112.[10] The VE did not, however, adjust the number of merchandise-marker jobs in the national economy to account for a sit/stand option. Moreover, the VE did not adjust

---

[10] While the VE referred to "that sit/stand option" as if it had come up previously during the hearing, her remark appears to be the first mention of such a limitation anywhere in the record. No such limitation was included in the ALJ's hypothetical questions.

either the number of cashier jobs or the number of merchandise-marker jobs to account for the shortfall between claimant's capacities for walking/standing and sitting and the six hours of walking/standing or sitting that are generally required to perform light work.

The ALJ asked a second question in which the hypothetical individual was limited to uncomplicated tasks. The VE testified that the additional limitation would eliminate the security-guard and gate-guard jobs, but would allow the individual to perform the merchandise-marker and cashier jobs, along with the job of storage-facility rental clerk.

After the VE identified jobs that claimant could still perform, the following exchange took place between the ALJ and the VE:

> Q And since the hypothetical limited the standing and walking to four hours out of an eight-hour day, I'm assuming that that's a deviation from the DOT [i.e., the Dictionary of Occupational Titles].[11] Is that correct?

_____

[11] "The DOT is published by the United States Department of Labor, and the SSA regulations designate it as a source of vocational evidence for use in making disability determinations." Regalado v. Colvin, No. 15-cv-299-PB, 2016 WL 4775525, at *4 n.7 (D.N.H. Sept. 14, 2016) (citing 20 C.F.R. § 404.1560(b)(2)). The DOT classifies merchandise-marker, cashier, and storage-facility rental clerk as light-duty jobs, and the SSA regulations state that most light work "requires a good deal of walking or standing," 20 C.F.R. §§ 404.1567(b) & 416.967(b), which the SSA defines as "approximately 6 hours of

A   That's correct.  <u>DOT</u> does not –

Q   So upon what did you base your opinion?

A   – specify the sit/stand option or talk about
it at all.

Q   Okay.  So upon what did you base your opinion
regarding that –

A   I am basing that on my professional experience
and my analysis of these particular positions as well
as professional literature.

Tr. 113.

After claimant's hearing, the ALJ issued a decision.  In

it, she determined that claimant had five severe impairments,[12]

but also found that none of them met or medically equaled the

severity of any of the impairments on the SSA's list of

impairments that are per se disabling.  Then she assessed

claimant's RFC, in the following way:

> [T]he claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) except he can stand and/or walk for
> four hours and sit for four hours total in an eight-
> hour workday with normal breaks; never climb ladders,
> ropes or scaffolds; never crouch or crawl;
> occasionally balance, stoop and kneel; must avoid
> exposure to hazards such as unprotected heights,
> dangerous moving machinery and balancing on narrow
> surfaces, wet/slippery surfaces or uneven surfaces;

an 8-hour workday," Social Security Ruling 83-10, 1983 WL 31251,
at *6 (S.S.A. 1983).

[12] Those impairments are "thoralumbar scoliosis/degenerative
changes of the lumbar spine; bilateral hip arthritis; obesity
status post bariatric surgery; diabetes mellitus and obstructive
sleep apnea."  Tr. 18.

could drive while on the job on an occasional basis
and he is limited to uncomplicated tasks (defined as
tasks that can typically be learned in thirty days or
less). Due to symptoms, the claimant's concentration,
persistence, and pace would be diminished to the point
that productivity would be reduced but would not be
more than 10% below the norm.

Tr. 22.

Based upon the testimony of the VE, the ALJ determined that
claimant could not perform his past work but retained the RFC to
perform the light-duty jobs of merchandise marker, cashier, and
storage-facility rental clerk. Accordingly, she ruled that
claimant was not under a disability from September 15, 2012,
through November 2, 2016, which was the date of her decision.

## III. Discussion

### A. The Legal Framework

To be eligible for DIB, a person must: (1) be insured for
that benefit; (2) not have reached retirement age; (3) have
filed an application; and (4) be under a disability. 42 U.S.C.
§ 423(a)(1)(A)-(D). To be eligible for SSI, a person must be
aged, blind, or disabled, and must meet certain requirements
pertaining to income and assets. 42 U.S.C. § 1382(a). The only
question in this case is whether the ALJ correctly determined
that Baillargeon was not under a disability from September 15,
2012, through November 2, 2016.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI, an ALJ is required to employ a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are:  1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Purdy, 887 F.3d at 10 (quoting Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); citing 20 C.F.R. § 416.920).

At the first four steps in the sequential evaluation process, the claimant bears both the burden of production and the burden of proof.  See Purdy, 887 F.3d at 9 (citing Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must prove he is disabled by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the [Acting]

> Commissioner then has the burden at Step 5 of coming
> forward with evidence of specific jobs in the national
> economy that the [claimant] can still perform. Arocho
> v. Sec'y of Health & Human Servs., 670 F.2d 374, 375
> (1st Cir. 1982).

Seavey, 276 F.3d at 5 (parallel citations omitted).

Under some circumstances, "the [Acting] Commissioner can meet her burden [at Step 5] through the use of a chart contained in the Social Security regulations." Seavey, 276 F.3d at 5 (citing 20 C.F.R. § 416.969; 20 C.F.R. Pt. 404, Subpt. P, App. 2, tables 1-3 (2001); Heckler v. Campbell, 461 U.S. 458 (1983)). But the Acting Commissioner cannot always meet her burden that way, and it may be necessary for an ALJ to rely upon the testimony of a vocational expert if, for example: (1) "an individual's exertional RFC does not coincide with the exertional criteria of any one of the [exertional] ranges, i.e. sedentary, light, and medium, as defined in sections 404.1567 and 416.967 of the regulations," Social Security Ruling ("SSR") 83-12, 1983 WL 31253, at *1 (S.S.A. 1983); see also Gross v. Colvin, 213 F. Supp. 3d 229, 234 (D. Mass. 2016) (citations omitted); or (2) a claimant has both exertional and nonexertional limitations, see Sherman v. Colvin, No. 16-cv-125-LM, 2016 WL 7165890, at *4-5 (D.N.H. Dec. 8, 2016). Furthermore, "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying

on the VE . . . evidence to support a determination or decision about whether [a] claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

B.  Baillargeon's Claims

Baillargeon claims that the ALJ erred by:  (1) failing to find that his diabetic peripheral neuropathy was a severe impairment at Step 2; (2) relying upon Dr. Kwock's testimony when determining his RFC; (3) giving too little weight to Ms. Chauvette's opinion and Dr. Sponseller's 2012 opinion when determining his RFC; and (4) relying upon the testimony of the VE at Step 5 of the sequential evaluation process. Baillargeon's fourth claim is meritorious, and dispositive.

Baillargeon's fourth claim bears this caption:  "The ALJ erred by relying on vocational testimony given in response to a question based on a flawed RFC assessment."  Cl.'s Mot. to Reverse (doc. no. 11) 14.  But after devoting a paragraph to that argument, claimant shifts gears, and argues that the ALJ also erred by relying upon the VE's testimony that a person who could walk/stand for only four hours a day was capable of performing three different light-duty jobs.  The second portion of Baillargeon's fourth claim merits a remand.

According to the SSA regulations that describe the exertional requirements of jobs:

> Light work involves lifting no more than 20 pounds at
> a time with frequent lifting or carrying of objects
> weighing up to 10 pounds.  Even though the weight
> lifted may be very little, a job is in this category
> when it requires a good deal of walking or standing,
> or when it involves sitting most of the time with some
> pushing and pulling of arm or leg controls.

20 C.F.R. §§ 404.1567(b) & 416.967(b) (emphasis added).

As for what qualifies as "a good deal of walking or standing," the SSA has explained that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Trudnak v. Berryhill, No. 17-cv-195-LM, 2018 WL 2058103, at *4 (D.N.H. May 3, 2018) (quoting SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983)).  As for "sitting most of the time," the court presumes that the regulation is intended to track the sitting requirement for sedentary work, which is defined as "work performed primarily in a seated position," SSR 83–10, 1983 WL 31251, at *5, and which entails sitting for "approximately 6 hours of an 8-hour workday," id.  While the regulation quoted above describes light-duty jobs that involve a good deal of walking or standing and a small amount of sitting, or that involve a good deal of sitting and a small amount of walking or standing, it does not, on its face, describe light work as involving a 50/50 mix of walking/standing and sitting.  Thus, it seems beyond dispute that an inability to walk/stand for more than four hours coupled with an inability to sit for more than four hours would

affect a person's capacity to perform the full range of light work.

In her hypothetical question to the VE, the ALJ posited an individual who could walk/stand for only four hours a day and who could sit for only four hours a day.  The VE testified that such a person could perform three light-duty jobs.  The ALJ identified a potential problem with the VE's testimony that a person who could walk/stand for only four hours was capable of light work.  She described that testimony as "a deviation from the DOT," Tr. 113, and to her credit, she asked the VE about it, see SSR 00-4p, 2000 WL 1898704, at *4 (explaining that "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT").  As the court has noted, the VE responded to the ALJ's inquiry by referring to a sit/stand option, and her own professional experience.

The VE's invocation of a sit/stand option to mitigate claimant's inability to walk/stand for more than four hours a day is unavailing.  With regard to the effect of a sit/stand option, the SSA has explained that "[i]n some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting

and standing." SSR 83-12, 1983 WL 31253, at *4 (emphasis

added).  In those cases, where "an individual is not

functionally capable of doing either the prolonged sitting

contemplated in the definition of sedentary work (and for the

relatively few light jobs which are preformed primarily in a

seated position) or the prolonged standing or walking

contemplated for most light work," id. (emphasis added), a VE

can identify jobs in the national economy that allow for a

sit/stand option, and that can be performed by a person who

cannot walk/stand or sit for long uninterrupted periods of time.

But, as discussed in SSR 83-12, the sit/stand option comes into

play only when a person is capable of either the six hours of

walking/standing or the six hours of sitting that are required

to perform one or the other of the two kinds of light-duty jobs

that are described in 20 C.F.R. §§ 404.1567(b) and 416.967(b).

In other words, the function of the sit/stand option is to

spread the required six hours of walking/standing over more than

six hours, not to:  (1) allow less than six hours of

walking/standing to satisfy the six-hour requirement; or (2)

decrease the six-hours of walking/standing that is required for

most light-duty jobs.

Here, claimant's RFC allows for only four hours of

walking/standing and four hours of sitting.  There is nothing in

SSR 83-12 to suggest that a sit/stand option may be used to make

up for either of those functional deficits, and 20 C.F.R. §§ 404.1567(b) and 416.967(b) do not describe a category of light work that can be performed by a person who cannot walk/stand for more than four hours and who cannot sit for more than four hours. Thus, neither the VE's invocation of a sit/stand option nor the AJL's adoption of the VE's testimony establishes that claimant is capable of the walking/standing requirements of most light-duty jobs or the sitting requirements of those light-duty jobs that are primarily performed in a seated position.

That said, an inability to walk/stand for six hours does not necessarily preclude a person from having the RFC to perform light work, as Judge McAuliffe recognized in the case on which the Acting Commissioner relies, Putnam v. Astrue, No. 10-cv-371-SM, 2011 WL 3320518 (D.N.H. Aug. 1, 2011). The problem for the Acting Commissioner is that what happened in Putnam is not what happened here.

In Putnam, the "claimant assert[ed] that the ALJ's determination that he could stand and walk for up to one hour each day, but only in increments of 15 minutes, [was] inconsistent with the conclusion that [he] could perform light work." 2011 WL 3320518, at *4. Judge McAuliffe explained that the inconsistency the claimant identified was of no moment, for the following reasons:

18

[T]he vocational expert . . . explained that,
notwithstanding their characterization as involving
"light" work, the jobs she identified actually
involved only a small amount of walking and standing.
And, she explained the inconsistency between her
testimony and the job descriptions set forth in the
DOT as being "based on [her] knowledge of the way the
jobs are performed, from working with individuals with
varied work backgrounds, and from doing job placement
with individuals." Additionally, when pressed by
claimant's counsel about the job of "storage facility
rental clerk," the vocational expert explained that
she had conducted a job analysis and, therefore,
understood that (at least in some situations) the job
requires less than two hours of standing and walking
per day. No more was necessary, and the ALJ was
entitled to rely upon the VE's expertise in concluding
that claimant was capable of performing the specified
jobs.

Id. at *5 (citing SSR 00-4p, 2000 WL 1898704, at *2; Barker v.
Astrue, Civ. No. 09-437-P-S, 2010 WL 2680532, at *4 (D. Me. June
29, 2010)) (citations to the record omitted).

Here, by contrast, the VE said nothing about the amount of
walking/standing or the amount of sitting that was necessary to
perform any of the jobs she said claimant could do.[13]  Thus, she
offered no explanation, much less the reasonable explanation
required by SSR 00-4p, for how any of those jobs could be
performed by a person who did not have the RFC to do either the
six hours of walking/standing required for most light work, or
the six hours of sitting required for the light-duty jobs that

---

[13] The only specific evidence she offered concerning those
jobs was that about half of the cashier jobs in the national
economy allowed for a sit/stand option.

are performed in a seated position.  Beyond that, while the ALJ
in this case gave claimant an RFC that permits no more than four
hours of sitting per day, the claimant in Putnam could sit for
at least six hours per day with no particular limitation.  See
Jt. Statement of Material Facts at 3, 4, 5, 8, Putnam v. Astrue,
No. 10-cv-371-SM (D.N.H. Mar. 16, 2011), ECF No. 11.  Thus, the
claimant in Putnam, unlike claimant in this case, had the
exertional RFC to do those light-duty jobs that are performed
mostly while sitting down.  In short, Putnam provides no basis
for affirming the ALJ's step-five determination in this case.

Rather, this case appears to have more in common with Beede
v. Colvin, which resulted in a remand because the ALJ failed to
"'elicit a reasonable explanation for [a] conflict [between the
VE's testimony and the DOT] before relying on the [VE's]
evidence to support' his determination that Beede was [not]
disabled," No. 16-cv-010-JL, 2017 WL 414059, at *4 (D.N.H. Jan.
31, 2017) (quoting SSR 00-4p, 2000 WL 1898704, at *2).  In
Beede, the ALJ determined that the claimant had the RFC to
perform light work, except that he could "stand and walk up to
1-hour per work day [and was] unlimited with respect to sitting
but require[d] the ability to alternate position periodically as
needed 30 minutes at a time."  Id. at *2.[14]  In response to a

---

[14] Like the claimant in Putnam, but unlike claimant in this
case, the claimant in Beede retained the RFC to meet the sitting

hypothetical question incorporating the foregoing RFC, the VE testified that "three [light-duty] jobs met those requirements: price marker, furniture rental consultant, and laundry classifier."  Id. at *4 (footnote omitted).

The ALJ in Beede recognized an inconsistency between the VE's testimony and the information in the DOT and attempted to resolve it by asking:  "Now, these are all light jobs as well. And we're looking at primarily a seated-type position.  And these jobs would tolerate that mix of sitting and standing?" 2017 WL 414059, at *4.  The decision continues:

> The vocational expert testified that "the Dictionary
> of Occupational Titles does not categorize the
> sit/stand option" that the ALJ included in Beede's
> RFC, but that "[t]he jobs provided today as examples
> do provide a sit/stand option for the individual as in
> the hypothetical."  She drew this conclusion from her
> "experience in working with employers, human resource
> representatives, corporation[s], when writing job
> analyses, when observing individuals in the work
> place, also asking questions for research and labor
> market surveys."

Id.  That was not a reasonable explanation for the conflict between the VE's evidence and the information in the DOT:

> Though the vocational expert outlined her experience,
> she offered no explanation for how or why (1) jobs
> listed as "light work" would be "primarily a seated-
> type position," or (2) these jobs in particular "would
> tolerate [the] mix of sitting and standing" described
> in the RFC.  Absent such evidence, the ALJ has not
> satisfied his obligation to "elicit a reasonable
> explanation for the conflict before relying on the

requirement imposed by light-duty jobs that are performed primarily in a seated position.

[vocational expert] evidence to support" his
determination that Beede was disabled.

Id. (citing SSR 00-4p, 2000 WL 1898704, at *2; Colby v.
Barnhart, No. Civ.03-189-PB, 2004 WL 1683142, at *6 (D.N.H. July
27, 2004)).

Here, the VE responded to the ALJ's question about a
conflict between her testimony and the DOT by mentioning her
"professional experience and [her] analysis of these particular
positions as well as professional literature." Tr. 113. But
she offered no explanation for how or why the three light-duty
jobs she said claimant could do could be performed by a person
who lacked the capacity to walk/stand for six hours per day and
who lacked the capacity to sit for more than four hours per day.
Thus, as in Beede, the ALJ in this case erred by determining, at
Step 5, that claimant was not disabled because he was capable of
performing the jobs identified by the VE. Thus, Beede counsels
in favor of a remand in this case.

Further support for a decision to remand this matter may be
found in Judge Talwani's decision in Gross. In that case, the
ALJ found that the claimant had "the residual functional
capacity to perform light work as defined in 20 C.F.R. §
404.1567(b) except he can stand or walk for no more than 2 hours
in total over the course of an 8-hour workday." Gross, 213 F.

Supp. 3d at 231 (quoting the record).  Judge Talwani described

the questioning of the VE this way:

> The ALJ asked Dr. Lasky to identify "light jobs" that
> one would be able to perform given the additional
> restrictions assigned to Gross, most notably the
> restriction that he may only stand or walk for two
> hours in an eight hour work day.  Dr. Lasky identified
> three such jobs: an inspector, a photocopy machine
> operator, and a mail clerk.  During examination from
> Gross' attorney, Dr. Lasky stated that "there would be
> variability" as to the number of employers who would
> offer these positions to candidates who are limited to
> only two hours of standing a day.  Dr. Lasky also
> testified that it would not be uncommon for these
> types of positions to have additional
> responsibilities, beyond their job description.

Id. at 232 (citations to the record omitted).  Based upon the

VE's testimony, the ALJ in Gross determined, at Step 5, that

there were jobs in the national economy that the claimant could

perform.  See id.

    After characterizing the claimant as a person with

"exertional limits that fall between two ranges of work [i.e.,

light and sedentary]," Gross, 213 F. Supp. 3d at 233, Judge

Talwani turned to SSR 83-12 for guidance.  See id.  In response

to the claimant's argument that an RFC that limited him to no

more than two hours a day of walking/standing required a finding

that he was limited to sedentary work, see id. at 234, Judge

Talwani disagreed, pointing out:

> [T]he Social Security regulations do not require
> claimants to be able to perform the full range of work
> within one category.  It is in these situations that
> SSR 83-12 advises the ALJ [to] use a vocational expert

> to determine the impact the reduced exertional
> capacity has on the occupational base.

Id. (citations omitted).  While acknowledging the possibility that a person with the capacity to walk/stand for only two hours a day could be capable of performing some light-duty work, Judge Talwani rejected the ALJ's reliance upon the VE's testimony in the case before her, on grounds that the VE was not sufficiently clear about the "methodology he used to account for the reduced exertional capacity of Gross." Id.  Here, the ALJ asked fewer questions of the VE than the ALJ asked in Gross, and the VE in this case offered less explanation than the VE provided in Gross.  In Gross "the lack of clarity as to the methodology used [by the VE] to account for Gross' exertional limitations [was] grounds for remand, [because] the court [was] unable to conclude that the ALJ's findings were supported by substantial evidence." Id. at 235.  A similar result is warranted here.

At Step 5, the Acting Commissioner bears the burden of identifying jobs that a claimant can still perform when he lacks the RFC to perform his past work.  See Seavey, 276 F.3d at 5. In this case, the Acting Commissioner has not produced adequate testimony from a VE that explains how any of the three light-duty jobs she identified can be performed by a person who cannot walk/stand for more than four hours in an eight-hour day and who

cannot sit for more than four hours in an eight-hour day. Accordingly, a remand is required.

## IV. Conclusion

For the reasons detailed above, the Acting Commissioner's motion for an order affirming her decision[15] is denied, and Baillargeon's motion to reverse that decision[16] is granted to the extent that this matter is remanded to the Acting Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order. The clerk of the court shall enter judgment in favor of Baillargeon and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: January 15, 2018

cc: Alexandra M. Jackson, Esq.
    Karen B. Fitzmaurice, Esq.
    Penelope E. Gronbeck, Esq.
    Robert J. Rabuck, AUSA

---

[15] Doc. no. 12.

[16] Doc. no. 11.